718. *Accord: Cooper v. Singer,* 689 F.2d 929 (10th Cir.1982).[4]

█ This Court believes that an award of attorneys' fees in an amount representing 40% of the sum received by plaintiff bears a reasonable relation to the degree of success attained by plaintiff and will adequately compensate plaintiff's attorneys for their efforts. Moreover, an award in that amount will effectuate the congressional purpose of enabling plaintiffs to protect their civil rights while preventing a windfall to plaintiffs' attorneys at the expense of defendants. *See* discussion in *Cooper v. Singer, supra.* Accordingly, this Court will enter judgment against defendant as and for attorneys' fees in the sum of $12,000.00.

Plaintiff has also requested compensation for its expenses in this action in the amount of $5,534.55. These expenses were reasonably expended by plaintiff in prosecuting this action. Accordingly, an additional sum of $5,534.55 will be awarded to plaintiff as and for expenses.

█ Finally, defendant Alberici has also requested attorneys' fees in this action under 42 U.S.C. § 1988. This motion will be denied. The Supreme Court has recently reiterated the standard with which defendant must comply in order to recover attorneys' fees. "A prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous or brought to harass or embarrass the defendant." *Hensley, supra,* —— U.S. at ——, n. 2, 103 S.Ct. at 1937, n. 2. Alberici has alleged no facts which would entitle it to a fee under the standard enunciated by the Supreme Court. Moreover, the evidence in this case reflects no such facts. Therefore, defendant's motion for attorneys' fees will be denied.

Harry LEWIS, Plaintiff,

v.

Donald R. ANSELMI, et al., Defendants.

No. 82 Civ. 2082–CLB.

United States District Court,
S.D. New York.

June 7, 1983.

Bruce Gerstein, of Garwin, Bronzaft & Gerstein, New York City, for plaintiff.

---

4. The Eighth Circuit has not ruled on this issue. In *Doe v. Poelker,* 527 F.2d 605 (8th Cir.1976) that Court cited *Johnson* with approval and held that the decision did not preclude a fee award where *no* fee contract had been entered into. The Court expressed no opinion as to the significance of that decision in cases such as the instant case. *See also Dean v. Gladney,* 621 F.2d 1331, 1338 (5th Cir.1980), *cert. denied,* 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981).

Judith S. Kaye of Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant Lionel.

Asa Rountree of Debevoise & Plimpton, New York City, for defendant Price Waterhouse.

Edward N. Costikyan, Mark Belnick, Gerard Harper and Andrew Frackman of Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for individual defendants.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

In this motion, fully submitted for decision March 21, 1983, defendants Donald R. Anselmi, Leo P. Arnaboldi, Jr., Eugene P. Bernardi, Roland D. Burkhardt, Paul J. Chase, Stanley Gerwitz, Joseph A. Gimma, Gordon H. Johnson, Arthur F. McGinnis, Jr., Ronald D. Saypol, Richard R. Schilling, Jr. and Robert A. Stein (the "individual defendants") seek to dismiss the complaint filed by plaintiff Harry Lewis on behalf of the Lionel Corporation, of which plaintiff is a stockholder. The grounds urged in support of the motion to dismiss are:

1. pursuant to Rules 12(c) and 23.1, F.R. Civ.P. for failure to make a prior demand upon the Board of Directors of Lionel or to plead with any particularity facts sufficient to excuse demand;

2. pursuant to Rule 23.1, F.R.Civ.P., for lack of fair and adequate representation;

3. pursuant to Rules 9(b) and 12(b), F.R. Civ.P., for failure to plead fraud with particularity as required; and

4. with respect to state law claims for lack of subject matter jurisdiction.

Defendant Price Waterhouse (sued as Price Waterhouse & Co.) also moves pursuant to Rules 12(b) and 9(b) to dismiss the complaint against it for lack of subject matter jurisdiction and for failure to plead fraud with the necessary particularity.

Plaintiff has moved for an order holding § 362 of the Bankruptcy Code inapplicable to this shareholder derivative action, and lifting the current stay of discovery with respect to Lionel.

The defendant corporation, Lionel, is a New York corporation, engaged primarily in the management of two subsidiaries, Lionel Leisure, Inc., the owner of retail toy stores, and Dale Electronics, Inc., which manufactures and sells electronic components. Its stock is or was publicly traded. In February 1982 Lionel filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. That proceeding remains pending.

At relevant times, ten of the individual defendants were directors of Lionel, defendants Saypol and Schilling were President and Vice President, respectively, and also served as directors, and defendants Burkhardt and Stein were officers but not directors. Defendant Price Waterhouse conducted an audit of Lionel.

Plaintiff's complaint contains six separately pleaded claims. Subject matter jurisdiction for the first four of plaintiff's six claims is said to be based upon § 27 of the Securities Exchange Act of 1934. Claims five and six are pendent state law claims. The first three claims arise from a decision in April 1981 by the Board of Directors of Lionel to seek shareholder approval for an amendment to an employee bonus program. The fourth claim relates to a Rule 10b–5 class action filed against Lionel earlier in the year (82 Civ. 1049–JES).

In the fifth and sixth claims, plaintiff challenges the propriety of two decisions regarding the compensation paid to two top Lionel executives, defendants Schilling and Saypol.

In 1977, the Board of Directors of Lionel, with shareholder approval, adopted an employee compensation plan known as "the Performance Share Plan" ("the Plan"). The Plan was designed to provide key employees with incentives to improve long term corporate growth. To further this goal the Plan established a pool of 315,000 "performance shares" which would be paid as a bonus to chosen employees if the corporation achieved specified growth objectives in earnings per shares in the upcoming four-year period.

The amount of shares awarded, and the identity of the employees to whom they would be given, was to be determined by a committee of outside directors. Although shares would be "awarded" throughout the four year period, none would be paid until the end of that period, December 31, 1981. At that point, the bonuses awarded during the first of the four years (1978) would be paid in a combination of cash and Lionel stock, the price of which would be computed by reference to the average price of the stock for a thirty day period immediately preceding the close of the four year period on December 31, 1981.

At its April 1981 meeting the Board of Directors proposed to the shareholders the following three amendments to the 1977 Plan: first, the maximum value of any performance share awarded on or after May 28, 1981 be limited to $15.00; second, that the total number of available shares be increased from 315,000 to 615,000; and third, that employees who had been awarded shares in 1978 be permitted to elect to be paid in July 1981 rather than in December, 1981 at the end of the four year period.

Following this meeting, the Board issued proxy solicitation materials in order to obtain the necessary shareholder approval for the proposed amendments. With respect to the proposal to permit the bonus shares to be paid in July, rather than waiting until they had been earned, in December, the statement informed shareholders:

"The Board of Directors believes that as a result of earnings improvements by the Company after December 31, 1977, there is *virtually no possibility* that participants under the 1977 Plan who received their grants in 1978 will not have earned the full amount of such grants effective as of December 31, 1981. The Board of Directors also believes that it is advisable to grant such participants the right to receive their award as soon as practicable after July 1, 1981, based on the value of the common stock during the 30 consecu-

tive business days prior thereto." (Emphasis added).

It is the above quoted language that, in part, forms the basis of the first four claims pleaded. Plaintiff alleges that the "virtually no possibility" language was materially false, because the defendants knew that there was a substantial possibility that, as it ultimately turned out, by the end of 1981, Lionel's corporate earnings would be below that necessary to permit the employees who had been awarded 1978 performance shares to be paid the full amount of those awards.[1]

It seems apparent to this Court that a suggestion that directors, experienced businessmen, believed in April that there was "virtually no possibility" that earnings would be below any particular figure at year's end is so facially absurd and untruthful that no reasonable stockholder would have relied on it in making a decision regarding the proxy statement. Everyone knows that sales are just as likely to fall off as grow in the course of a year. All sorts of unforeseen intervening events, alone or in combination may set future earnings projections at naught; these include war, insurrections, strikes, product safety recalls, failures of suppliers or customers, embezzlements and defalcations. And there are more. The word "virtually" is a well known lawyer's weasel word, the function of which is to dilute the words or phrases which follow. How could anybody not realize the emptiness of this representation, and not understand that the managers were cutting themselves an additional piece of cake?

However, plaintiff also alleges that the 1980 Annual Report, issued at about the same time as the April 1981 proxy solicitation and allegedly bearing directly on the proposed amendments to the 1977 Plan, was materially false in that it misrepresented Lionel's success in resolving difficulties experienced by Lionel Leisure, Inc., its retailing subsidiary. Plaintiff alleges that the individual defendants knew that these rep-

1. Plaintiff also alleges that the proxy statement was also materially false in that it failed to disclose that the 1978 performance shares had

been awarded as follows: 63,000 to defendant Saypol, 31,500 to defendant Schilling, and 10,-500 each to defendants Stein and Burkhardt.

resentations in the Annual Report were also false, and that defendant Price Waterhouse certified the financial statements contained therein knowing they were false.

Specifically, the first claim alleges that the defendants violated § 14(a) of the Securities Exchange Act of 1934 in issuing the 1978 Proxy Statement and 1980 Annual Report containing allegedly false and misleading statements. The second claim alleges that the actions of the defendants in issuing the Proxy Statement and the Annual Report constituted a scheme to defraud in violation of § 10(b) of the 1934 Act and Rule 10b–5. The third claim alleges that the individual defendants breached their fiduciary duty to Lionel by permitting the 1978 performance shares to be paid in full in July 1981.

The fourth claim is based upon a Rule 10b–5 class action filed against Lionel in 1982. That action charges the corporation with some of the same frauds alleged in this complaint.[2] Plaintiff here claims that if Lionel is found to have violated Rule 10b–5 and, as a consequence must pay money damages, the individual defendants will have breached their fiduciary duty to Lionel, and must reimburse Lionel for those damages.

The fifth and sixth claims challenge decisions made by the Board of Directors with respect to Lionel's relationship with defendants Saypol and Schilling. The fifth claim alleges that loans by Lionel to the two executives were made in violation of § 714 of the New York Business Corporation Law which prohibits a corporation from making loans to directors without shareholder approval. The sixth claim alleges that improvements in the employment contracts of Saypol and Schilling were not made in the best interest of Lionel and were a breach of fiduciary duty by the Board.

Plaintiff has brought this action "derivatively on behalf of and for the benefit of Lionel," and the action is therefore con-trolled by Rule 21, F.R.Civ.P. This rule requires a complaint to "allege with particularity the efforts, if any, made by plaintiff to obtain the action he desires, from the directors . . . and the reason for his failure to obtain the action or for not making the efforts." Rule 23.1, F.R.Civ.P.

The purpose of the prior demand rule is to permit a corporation itself to pursue a claim brought on its behalf, and thereby allow the Board of Directors to fulfill its designated position as manager of the corporation's business. *Elfenbein v. Gulf and Western Industries, Inc.,* 590 F.2d 445, 450 (2d Cir.1978); *Brody v. Chemical Bank,* 517 F.2d 932, 934 (2d Cir.1975). The rationale underlying the decision to place control of a corporation's legal action in the hands of the directors is twofold: first, corporate management is presumed to be in a superior position to determine the merits of a particular claim; and second, if a valid claim is presented, the corporation may well possess superior financial resources with which to pursue the litigation. *Lewis v. Graves,* 701 F.2d 245 (2d Cir.1983).

Despite the public policy favoring prior demand and the "vigorous enforcement" of Rule 23.1 by the courts of this Circuit, see *id., Elfenbein,* 590 F.2d at 451, it has long been the law that demand need not be made where "futile," *Cathedral Estates v. Taft Realty Corporation,* 228 F.2d 85, 88 (2d Cir.1955); *see also, Abramowitz v. Posner,* 672 F.2d 1025, 1033 (2d Cir.1982). Futility is present when, for example, the directors are antagonistic, adversely interested or involved in the transaction claimed to be fraudulent. *Id.*

In the instant complaint, plaintiff, who has made no demand, attempts to bring the facts of this case within the futility exception. With respect to the first four claims pleaded he states that demand would be futile because, first, each director caused Lionel to issue the allegedly false and misleading proxy statement and Annual Report

**2.** The class action pending before Judge Sprizzo of this Court was dismissed in October 1982 for failure to plead fraud with particularity as required by Rule 9(b), F.R.Civ.P. The class plaintiff was given leave to replead, and in the interim all proceedings have been stayed. (*Steinberg v. Anselmi, et al.,* 82 Civ. 1049–JES).

and is therefore liable; second, each "participated in, approved of, authorized or acquiesced in" the acts complained of; third, two of the defendants were substantial direct economic beneficiaries of the wrongful acts; and fourth, a request for the Board to redress the wrongs would be asking them to sue themselves, because all are sued here.

Demand to redress the fifth and sixth claims is said to be futile for reasons similar to those stated above, and in addition would be futile as to the fifth claim because under § 719 of the New York Business Corporation Law all directors are jointly and severally liable. However, only two members of the Lionel Board, defendants Saypol and Schilling, profited personally from any of the challenged actions. The eight other directors are not alleged to have received anything as the result of the fraud, nor has plaintiff demonstrated any other personal interest which might amount to bias, or interfere with an independent consideration of the challenged transactions.

■ The issue presented here is whether these allegations as amplified by plaintiff constitute sufficient involvement to demonstrate futility and excuse demand under Rule 23.1. For the reasons stated below we find that they do not.

Rule 23.1 represents a strong statement of public policy which this Court is bound to enforce. It has its historical origin in a perceived evil, the maintenance of strike suits by minority shareholders which impeded corporate management at great cost and to little purpose except the enrichment of counsel, coupled also with unnecessary premature interference by outsiders with internal corporate affairs, which should have been administered at least in the first instance by those elected by the shareholders to do so. The rule was strengthened further in this Circuit in the recent case of *Lewis v. Graves, supra,* holding:

"[A]bsent specific allegations of self-dealing or bias on the part of a majority of the board, mere approval and acquiescence are insufficient to render demand futile.

While we have not had occasion to rule on the issue of whether mere approval or acquiescence establishes futility, there is more than ample authority from other circuits that it does not. *See Grossman v. Johnson,* 674 F.2d 115, 124 (1st Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982); *Lewis v. Curtis,* 671 F.2d 779, 785 (3d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); *Greenspun v. Del E. Webb Corp.,* 634 F.2d 1204, 1210 (9th Cir.1980); *In re Kauffman Mutual Fund Actions,* 479 F.2d 257, 265 (1st Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). *But see Liboff v. Wolfson,* 437 F.2d 121, 122 (5th Cir.1971) (per curiam). The fact that a corporation's directors have previously approved transactions subsequently challenged in a derivative suit does not inevitably lead to the conclusion that those directors, bound by their fiduciary obligations to the corporation, will refuse to take up the suit. This is particularly true where the directors' prior acquiescence was obtained through fraud or where the dealings in question otherwise went sour for the corporation. Moreover, Rule 23.1 would be substantially diluted if prior board approval standing alone established futility. Derivative suits are almost invariably directed at major, allegedly illegal, corporate transactions. By virtue of their offices, directors ordinarily participate in the decision making involved in such transactions. .... Excusing demand on the mere basis of prior board acquiescence, therefore, would obviate the need for demand in practically every case.

We do not consider ourselves bound by dicta in our decision in *Abramowitz,* 672 F.2d at 1033, which appellant would have us rely on for the proposition that demand is automatically excused if all directors are named as defendants [footnote omitted]. The single fact that the plaintiff named as defendants more than a majority—in this case all—of McDermott's then serving directors in our view falls short of excusing demand. *See Lewis,* 671 F.2d at 785; *Heit v. Baird,* 567

F.2d 1157, 1162 (1st Cir.1977); *Brooks v. American Export Industries, Inc.,* 68 F.R.D. 506, 511 (S.D.N.Y.1975); *cf. Galef v. Alexander,* 615 F.2d 51, 59–60 (2d Cir. 1980) (discussing with apparent approval rationale of cases holding that demand must be made even where all directors have been named as defendants). To construe it as sufficient would mean that plaintiffs could readily circumvent the demand requirement merely by naming as defendants all members of the derivative corporation's board. Permitting plaintiffs to employ this tactic would eviscerate Rule 23.1, a rule that this Court has vigorously enforced, *see, e.g., Elfenbein,* 590 F.2d at 451; *Brody v. Chemical Bank,* 517 F.2d 932, 934 (2d Cir.1975) (per curiam); *Brody v. Chemical Bank,* 482 F.2d 1111, 1114 (2d Cir.) (per curiam), *cert. denied,* 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973). Plaintiff unpersuasively argues that—like magic—naming all of McDermott's directors as defendants caused the demand requirement to vanish. This transparent litigation tactic is like sleight of hand that is *slower* than the eye." 701 F.2d at 248–249.

Plaintiff's failure to satisfy the demand requirement of Rule 23.1 requires that the complaint be dismissed for failure to satisfy a condition precedent to suit. This Court reaches that conclusion in deference to the rule of *Lewis v. Graves, supra,* decided after this complaint was filed. We would be less than pragmatic if we were to believe that directors who signed the weasel worded proxy solicitation materials quoted *supra,* p. 770, would be likely to be diligent in pursuit of those hands which found their way into the cookie jar at Lionel. Indeed, we might concede in fairness that there is "virtually no likelihood" that as a result of a demand by Mr. Lewis, such a suit will be brought. We must however dispose of the motion based on the allegations in this complaint, tested against the rule of *Lewis v. Graves, supra,* rather than our own common sense perceptions of the likelihood of futility.

It is unnecessary at this time to reach any of the other grounds for dismissal raised in the motions, or to address the issues raised in plaintiff's motion.

The complaint is hereby dismissed without prejudice and without costs. Plaintiff may refile his complaint if an appropriate demand is made upon the Board of Directors of Lionel, followed by the foreseeable refusal.

So Ordered.