**Jill S. KAMEN, Plaintiff,**

v.

**KEMPER FINANCIAL SERVICES, INC., and Cash Equivalent Fund, Inc., Defendants.**

No. 85 C 4587.

United States District Court, N.D. Illinois, E.D.

Feb. 2, 1987.

**1154**

Richard Meyer, Millberg, Weiss, Berchad, Specthrie & Lerach, New York City, Clifford E. Yuknis, Shefsky, Saitlin & Froelich, Ltd., Chicago, Ill., for plaintiff.

Joan M. Hall, Joel T. Pelz, Kristen E. Lehker, Jenner & Block, Charles F. Custer, Martin M. Ruken, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

The plaintiff, Jill Kamen, is a shareholder in Cash Equivalent Fund, Inc. ("the Fund"), a money market mutual fund managed and administered by Kemper Financial Services, Inc. ("KFS"). Plaintiff instituted this shareholder's derivative action pursuant to the Investment Company Act of 1940, 15 U.S.C. § 80a–1 *et seq.* ("ICA" or "the Act"), challenging the fees charged by KFS for managing and administering the Fund. She alleges that KFS solicited a misleading proxy in violation of § 20(a) of the Act, 15 U.S.C. § 80a–20(a), and that KFS' excessive fees constitute a breach of its fiduciary duty in violation of § 36(b) of the Act. 15 U.S.C. § 80a–35(b).[1]

---

1. This court has jurisdiction pursuant to § 44 of the Act, 15 U.S.C. § 80a–43.

Defendants move to dismiss plaintiff's § 20(a) claims for failure to state a cause of action and for failure to make a demand on the Board of Directors as required by Fed.R.Civ.P. 23.1; and to strike plaintiff's jury demand. For the following reasons, the court grants the motions to dismiss and to strike the jury demand.

### Factual Allegations

The facts, as alleged in the complaint,[2] are as follows. The Fund is a diversified open-end investment company registered with the Securities and Exchange Commission under the ICA. It invests in a range of short-term money market instruments with maturities of one year or less. The Fund commenced operations on March 16, 1979, and, as of April 23, 1985, its total assets were approximately $4.683 billion.

KFS has acted as the Fund's investment adviser, manager, primary administrator and underwriter since the Fund's inception. In exchange for its services, KFS receives monthly fees paid under two separate agreements. The investment management agreement provides for an investment management fee calculated at the annual rate of .22 of 1% of the first $500 million of the combined average daily net assets of the portfolios managed by KFS, .20 of 1% of the next $500 million, .175 of 1% of the next $1 billion, .16 of 1% of the next $1 billion and .15 of 1% of average daily net assets of such portfolios over $3 billion. The administration, shareholder services and distribution agreement ("administration agreement") provides for an annual fee, payable monthly, on a basis of .33% of the first $500 million of average daily net assets, .30% of the next $500 million, .275% of the next $1 billion, .265% of the next $1 billion, and .25% of average daily net assets over $3 billion.

The Fund has experienced tremendous success in attracting shareholder funds in the past several years, which has caused a significant increase in the total fees payable to KFS under the two separate agreements. For the fiscal year ended July 31, 1984, the Fund paid KFS nearly $20 million in fees.[3]

The essence of plaintiff's complaint is that these fees are excessive, given the nature of the Fund and the services performed by KFS. Plaintiff alleges that, unlike other mutual funds, the management of the assets of a money market fund "does not require the detailed analysis of industries nor of complex industrial companies and the concomitant retention of a large staff of highly paid and sophisticated securities analysts [because] the assets of the Fund are ... invested in a relatively concentrated manner in fixed income obligations maturing in one year or less." (Compl. ¶ 9).[4] Despite the huge growth of the Fund and the manner in which it is serviced, the fee structure has remained the same since December 1, 1981, when the fees were increased by virtue of the administration agreement. According to Kamen, the increased compensation paid to KFS resulting from the enormous increase in

---

2. On a motion to dismiss, the court must accept all well pleaded facts as true, and must make all reasonable inferences in the light most favorable to the plaintiff. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *City of Milwaukee v. Saxbe*, 546 F.2d 693, 704 (7th Cir.1976).

3. Kamen filed a supplemental complaint on December 8, 1986. This complaint alleges that the Fund's Board of Directors amended KFS' administration agreement in November of 1986 to substantially increase the fees paid to KFS.

4. Paragraph 14 alleges:
   Because of the limited number, nature and variety of the Fund's investments, the investment decisions of the Fund can be made by a single person, or, at most, a handful of persons. The research and advisory activities of KFS are merely routine and administrative in nature, do not require any significant expertise or investment acumen, are performed (and were performed prior to the formation of the Fund) by KFS for other of its accounts, and consist principally of purchasing and 'turning over' money market instruments with a limited number of institutions. The incremental cost to KFS of performing these services for the Fund is minimal. In short, the investment advice provided by KFS is not worth the fees paid for that advice by the Fund and has not been worth the fees paid during the period covered by this complaint. Other advisers performed and have performed similar or superior services for lesser rates.

Fund assets is disproportionate to the services rendered by it. These allegations form the basis of Kamen's excessive fee claim under § 36(b) of the Act, 15 U.S.C. § 80a–35(b).

Kamen also alleges that KFS violated § 20 of the ICA, 15 U.S.C. § 80a–20, which proscribes the solicitation of misleading proxies in connection with a security of a registered investment company.[5] In addition to the Fund, KFS also acts as an investment manager to the Kemper Money Market Fund, Inc. ("MM"), a money market fund which is similar to the Fund in size, number of shareholders, and investment objective. MM and the Fund have some common directors, and require substantially the same services from KFS. According to Kamen, despite this similarity in size and objective, KFS exacts substantially greater fees from the Fund than it does from MM and many of its other clients.[6]

Kamen further alleges that, on or about September 12, 1984, KFS caused a proxy statement to be distributed to the shareholders for the annual meeting of shareholders scheduled for November 8, 1984. One of the purposes of the meeting was to obtain shareholder approval for the continuance of the investment management agreement with KFS. The proxy statement seeking shareholder approval of the investment management agreement compared the fees that KFS received from other investment companies to those paid by the Fund. Kamen alleges that, although the proxy correctly compared the services rendered to the Fund to those rendered to MM, it "misleadingly" described

MM's fees as "a maximum fee of .50 of 1% of the first $215 billion, with lesser rates on additional assets." This "misleading" description gave the false impression that MM's fees were as high or higher than those paid by the Fund, when KFS knew that the opposite was actually true. The proxy solicitation was successful, and KFS obtained shareholder approval for continuation of its investment management agreement with the Fund.

As the above allegations clearly demonstrate, the thrust of Kamen's § 20(a) claim is that KFS disseminated misleading proxies in order to obtain continued shareholder approval for allegedly exorbitant fees. KFS' motion to dismiss concerns only the § 20(a) claims. It urges dismissal of this claim on two grounds: first, because Kamen failed to make a demand on the Fund's directors, as required by Fed.R.Civ.P. 23.1; and second, because § 36(b) of the Act provides the exclusive remedy for excessive fees. For the following reasons, the court finds that, although the complaint properly alleges a cause of action under § 20(a), it must be dismissed because Kamen failed to comply with the demand requirements of Rule 23.1.

### Claims Under § 20 of ICA

KFS argues that ¶ 13 of the complaint, which alleges violations of § 20(a) of the ICA, 15 U.S.C. § 80a–20(a), must be dismissed because § 36(b) provides the exclusive remedy for shareholder claims alleging excessive fees. Section 20(a) of the ICA forbids the dissemination of misleading information in proxies solicited from mutual fund shareholders. Section 36(b) of the Act, which was passed in 1970,[7] authorizes

---

**5.** 15 U.S.C. § 80a–20(a) provides in pertinent part:

It shall be unlawful for any person, by use of the mails or any means of instrumentality of interstate commerce or otherwise, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect to any security of which a registered investment company is the issuer in contravention of such rules and regulations of the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 20a–1 renders the rules and regulations promulgated by the SEC pursuant to § 14(a) of

the Securities Exchange Act of 1934, 15 U.S.C. § 78n, applicable to misleading proxy claims under § 20(a) of the ICA. 17 C.F.R. 270.20a–1.

**6.** Kamen alleges that in the Fund's expenses in the year ended July 31, 1984 were .72% of its average net assets, while MM's expenses were only .53% of its average net assets. As a result, the Fund's yield for the year ended September 30, 1984 was approximately 21 basis points less than that of MM. (Compl. ¶ 12).

**7.** Section 20(a) was part of the original Investment Company Act passed in 1940.

a shareholder's suit to recover excessive fees from a fund's investment adviser. Congress added this section in order to remedy the fact that the Act, as originally passed, failed to "provide any mechanism by which the fairness of management contracts [between a fund and its adviser] could be tested in court." S.Rep. No. 91–184, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 4897, 4901. Section 36(b) creates a fiduciary duty on the part of the adviser "with respect to compensation for services or other payments paid by the fund ... to the advisers," *id.*, and authorizes shareholders to sue for breach of that fiduciary duty. *See generally Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984).

Prior to the passage of § 36(b), the Second Circuit had recognized an implied cause of action under the ICA for misleading proxy statements. *See Brown v. Bullock*, 194 F.Supp. 207, 231–34 (S.D. N.Y.), *aff'd*, 294 F.2d 415, 420–21 (2d Cir.1961).[8] It continued to recognize an implied cause of action for § 20(a) claims unrelated to allegations of excessive fees after the passage of the 1970 amendments. *Tannenbaum v. Zeller*, 552 F.2d 402 (2d Cir.), *cert. denied*, 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977); *Galfand v. Chestnutt Corp.*, 545 F.2d 807 (2d Cir.1976); *Rosenfeld v. E.R. Black*, 445 F.2d 1337 (2d Cir. 1971). In *Fogel v. Chestnutt Corp.*, 668 F.2d 100, 112 (2d Cir.1981), *cert. denied*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982), however, the court noted in dictum that § 36(b) may constitute a shareholder's exclusive remedy for his claims of excessive fees.

Although some district courts seized on the language in *Fogel* to disallow implied claims for excessive fees under the ICA,[9] a recent decision has recognized a claim under § 20(a) of the ICA in a situation involving facts very similar to the case at bar. In *Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 622 F.Supp. 169 (S.D.N.Y. 1985), the plaintiff-shareholder alleged that the management fee paid to the fund's adviser was excessive (36(b) claim) and that the defendants violated § 20(a) because the proxies soliciting shareholder approval of the management contract were misleading. The plaintiff sought repayment of the excessive fees under the § 36(b) claim, and sought profits and/or reimbursements for the amounts paid under the agreements obtained through the misleading proxy. *Schuyt*, 622 F.Supp. at 171. The defendants sought dismissal of the § 20(a) claim on the grounds that § 36(b) provided the exclusive remedy for plaintiffs' excessive fee claims.

The court rejected Rowe Price's argument that Schuyt's § 20(a) claim was " 'an excessive fee claim dressed in slightly different clothes.' " *Id.* at 173–74. It noted:

Count III of the Third Amended Complaint does not allege *solely* that advisory fees paid by the Fund to Price Associates were excessive. The § 20(a) claim raised in Count III advances distinct factual allegations of material nondisclosures in particular proxy statements, and seeks legal and equitable relief beyond the mere recapture of excessive fees. Because it cannot fairly be characterized as a claim that alleges *solely* a breach of fiduciary duty arising from excessive compensation paid to an investment adviser, plaintiff's § 20(a) claim does not fall within the narrow category of claims that the Second Circuit panel in *Fogel v. Chestnutt, supra*, thought might properly be brought only under § 36(b).

*Id.* at 174 (emphasis in original). In the present case, Kamen has not denominated her claims in separate counts.[10] However,

---

**8.** All of the cases discussing an implied right of action under § 20(a) have arisen in the Second Circuit.

**9.** *See, e.g., Gartenberg v. Merrill Lynch Asset Management, Inc.*, 528 F.Supp. 1038, 1067 (S.D. N.Y.1981), *aff'd*, 694 F.2d 923 (2d Cir.1982), *cert. denied*, 461 U.S. 906, 103 S.Ct. 1877, 76 L.Ed.2d 808 (1983) (*"Gartenberg I"*); *Tarlov v. Paine*

*Webber Cash Fund, Inc.*, 559 F.Supp. 429, 437 (D.Conn.1983).

**10.** In this respect, Kamen's complaint fails to satisfy the requirements of Fed.R.Civ.P. 10(b), which requires "that each claim founded upon a separate transaction or occurrence ... shall be stated in a separate count."

it is clear from the pleadings that she seeks damages for the alleged § 20(a) violation and reimbursement of excessive fees for the § 36(b) claim. The factual allegations of misleading proxy statements are distinct from the fiduciary breach allegations. Both address a distinct form of cupable conduct separately redressable under the ICA. Following *Schuyt,* the court finds that Kamen should be able to pursue both claims in this lawsuit.

The Supreme Court recently decided a similar issue in *Herman & MacLean v. Huddleston,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). In that case, the plaintiff alleged that defendants issued a misleading registration statement, and filed suit under § 10(b) of the Securities Exchange Act of 1934 and § 11 of the Securities Act of 1933. The defendants sought dismissal of the implied action under § 10(b) on the grounds that § 11 provided the exclusive remedy for misrepresentations relating to registration statements. The Supreme Court noted that these two provisions involve distinct causes of action, and were intended to address different wrongdoings. Thus, although the evidence supporting the two claims might overlap, this fact, in and of itself, was insufficient to preclude plaintiff from pursuing both claims. 495 U.S. at 381, 103 S.Ct. at 686.

■ This analysis applies with equal force to KFS' argument that § 36(b) provides the sole remedy for excessive fees. Section 20(a) was enacted in order to ensure complete and adequate disclosures in proxy materials solicited from mutual fund shareholders. Patterned after § 14 of the Securities Exchange Act of 1934, it prohibits dissemination of misleading proxies. In order to recover for a violation of this section, the plaintiff must establish "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having signifi-

cantly altered the 'total mix' of the information available." *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976). In contrast, a plaintiff in a § 36(b) suit must prove a breach of fiduciary duty on the part of the investment adviser. 15 U.S.C. § 80a–35(b)(1). Proof of misrepresentations may assist the plaintiff in his burden of proof, but a plaintiff need not establish the existence of misrepresentations in order to prevail on a § 36(b) claim. To prove a § 36(b) violation, the plaintiff must demonstrate that the adviser charges a fee "that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arms length bargaining." *Gartenberg I,* 694 F.2d at 928. Thus, although a violation of § 20(a) may be relevant to a § 36(b) claim, it clearly exists independent of that claim. *See Schuyt,* 622 F.Supp. at 176–77.[11] Following *Huddleston,* there is no reason to carve out an exception to the well-recognized implied cause of action from misleading proxy statements under § 20(a) of the ICA.

Contrary to KFS' argument, the legislative history of the passage of § 36(b) does not evince a Congressional intent to preclude other suits to recover excessive fees based on wrongdoings prohibited by other sections of the ICA. In *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 378–79, 102 S.Ct. 1825, 1839, 72 L.Ed.2d 182 (1982), the Court held that when Congress amends a pre-existing law, the proper inquiry is not whether Congress intended to create a private remedy to supplement the express remedy, but rather, whether "Congress intended to *preserve* the pre-existing remedy." (emphasis supplied). Prior to the passage of § 36(b), the courts had recognized an implied right of action for claims related to the procurement of an advisory contract which permits

---

**11.** The court disagrees with KFS' argument that allowing § 20(a) claims in the context of excessive fee suits would thwart the intent of Congress when it passed § 36(b). According to KFS, allowance of a § 20(a) claim would undermine the procedural restrictions contained in § 36(b). What KFS fails to acknowledge is that a § 20(a) claim exists independent of a § 36(b) claim, and involves different elements of proof. Not all § 36(b) claims involve misleading proxies, and a plaintiff needs a misrepresentation in a proxy statement if she wishes to proceed under § 20(a).

excessive fees. *Brown v. Bullock*, 294 F.2d 415 (2d Cir.1961). *Cf. J.I. Case v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (recognizing an implied cause of action under § 14 of the Securities Exchange Act of 1934). This court agrees with the *Schuyt* court's conclusion that "nothing in the statute or legislative history indicates that Congress intended to preclude a mutual fund shareholder from joining a § 36(b) claim for excessive fees with claims for breach of other fiduciary duties or for other distinct violations of the ICA." *Schuyt*, 622 F.Supp. at 177 (footnote omitted). *See Krome v. Merrill Lynch & Co., Inc.*, 637 F.Supp. 910, 917–20 (S.D.N.Y. 1986); Note, *Implied Private Rights of Action under the Investment Company Act of 1940*, 40 Wash. & Lee L.Rev. 1069, 1085–86 (1983).

KFS relies primarily on *Gartenberg I* to support its argument that § 36(b) provides the exclusive remedy for excessive fee claims. *Gartenberg I* provides little support for the argument that § 20(a) claims cannot be joined with claims under § 36(b). In *Gartenberg I*, the plaintiff did not raise the issue of alleged violations of § 20(a) until after the court had completed a bench trial on his § 36(b) claims. This district court dismissed this belated claim because the alleged misstatements were not misleading. 528 F.Supp. at 1066. It added, "[i]n any event, ... § 20(a) of the Act w[as] not intended to and do[es] not establish a private right of action in the context of a claim such as here for recovery of compensation under § 36(b)." *Id.* at 1067. On appeal, the Second Circuit affirmed the District Court's findings with respect to Gartenberg's § 36(b) claims. 694 F.2d at 930–33. The court also affirmed the district court's dismissal of the belated § 20(a) claims because they were not properly before the district court for adjudication. It added, "[i]n any event, for the reasons already expressed by us and the additional reasons stated by the district court in its discussion of these additional claims, ... they are meritless." 694 F.2d at 934.

The *Gartenberg* plaintiffs filed a second case after the Second Circuit issued its decision in *Gartenberg I*. *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 573 F.Supp. 1293 (S.D.N.Y.1983), *aff'd*, 740 F.2d 190 (2d Cir.1984) (*"Gartenberg II"*). In *Gartenberg II*, the plaintiffs raised claims under both § 20(a) and § 36(b). The case was assigned to the same district judge who tried *Gartenberg I*. It is noteworthy that this judge tried both claims, without mention of his statement in *Gartenberg I* that § 36(b) might preclude § 20(a) claims based on misleading proxies used to authorize excessive fees. *Gartenberg II*, 573 F.Supp. at 1307 (discussing merits of § 20(a) claim). The *Gartenberg II* affirmance also fails to refer to the court's earlier statement that § 36(b) precludes § 20(a) claims in this type of case.

In *Schuyt*, the court noted the same distinction between the treatment of § 20(a) claims in *Gartenberg I* and *Gartenberg II*. It concluded:

> [The District Court's] strikingly different treatment of the two § 20(a) claims raised in *Gartenberg II* strongly suggests that his rejection at [the] § 20(a) claim in *Gartenberg I* and *II* resulted from the defects peculiar to that claim and not from a defect generic to all § 20(a) claims joined with a claim for excessive fees.

*Schuyt*, 622 F.Supp. at 176.[12] This court agrees that the court's comments in *Gartenberg I* must be viewed in the context of that case. Given the Second Circuit's acknowledgment of § 20(a) claims after *Gartenberg I*, the court finds that this case provides scant support to KFS' argument that § 20(a) claims can never be raised in connection with a § 36(b) suit for excessive fees.

■ For the reasons set forth above, the court finds that the passage of § 36(b) does not preclude a claim under § 20(a) which alleges that the management contract was secured through a misleading proxy.

---

12. The court notes that the Second Circuit has issued another decision subsequent to *Gartenberg II* which allowed § 20(a) claims without mention of the possible limitation imposed by § 36(b). *See Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76 (2d Cir.1985).

Therefore, the court denies KFS' motion to dismiss Kamen's § 20(a) claim for failure to state a cause of action.

### Rule 23.1's Demand Requirement

This complaint was filed as a shareholder's derivative action in which Kamen seeks to sue on behalf of the Fund to recover excessive fees allegedly paid to KFS. Rule 23.1, which governs derivative actions, provides:

> In a derivative action brought by [a] shareholder ... to enforce a right of a corporation, ... the corporation having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors, ... and the reasons for his failure to obtain the action or for not making the effort.

In *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 104 S.Ct. 831, 841, 78 L.Ed.2d 645 (1984), the Supreme Court held that Rule 23.1's demand requirement is inapplicable to shareholder suits challenging excessive advisory fees under § 36(b). KFS acknowledges that Kamen's § 36(b) claims cannot be dismissed for noncompliance with Rule 23.1; however, it urges the court to dismiss the § 20(a) claims, which are not implicated by the *Fox* decision, because Kamen failed to make a demand on the Fund's Board of Directors in accordance with Rule 23.1.

The purpose of Rule 23.1's demand requirement is to notify directors of a potential claim, so that they may investigate it and pursue intracorporate remedies before a court intervenes at a shareholder's request. *Thornton v. Evans*, 692 F.2d 1064, 1080 (7th Cir.1982); *Mills v. Esmark, Inc.*, 91 F.R.D. 70, 72 (N.D. Ill.1981). The demand requirement stems from the recognition that "derivative actions brought by minority stockholders could, if unconstrained, undermine the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." *Daily Income Fund, Inc. v.*

*Fox*, 464 U.S. 523, 104 S.Ct. 831, 836, 78 L.Ed.2d 645 (1984). Rule 23.1's limitations are "designed to limit the use of the [shareholders' derivative suit] to situations in which, due to an unjustified failure of the corporation to act for itself, it [is] appropriate to permit a shareholder 'to institute and conduct litigation which usually belongs to the corporation.'" *Id.*, citing *Hawes v. City of Oakland*, 104 U.S. (14 Otto) 450, 460, 26 L.Ed 827 (1882).

The rationale underlying Rule 23.1's demand requirement is two-fold: first, the courts presume that management is in a superior position to assess the merits of a particular claim; and second, assuming the claim is valid, the corporation may possess superior financial resources with which to pursue the litigation. *Lewis v. Anselmi*, 564 F.Supp. 768, 771 (S.D.N.Y.1983); *Abrams v. Mayflower Investors, Inc.*, 62 F.R.D. 361, 369 (N.D. Ill. 1974). The "futility" exception to the demand requirement recognizes that there are circumstances where a demand would be a useless gesture, given the relationship between the board of directors and the alleged illegal transaction. Accordingly, Rule 23.1 permits a court to excuse the failure to make a demand if the plaintiff alleges with particularity specific circumstances which indicate that the directors would have ignored her complaints or refused to take any action on them. *See generally Nussbacher v. Continental Illinois National Bank & Trust Co. of Chicago*, 518 F.2d 873, 875 (7th Cir.), *cert. denied*, 424 U.S. 928, 96 S.Ct. 1142, 47 L.Ed.2d 338, (1976) (plaintiff's failure to make formal demand excused because plaintiff was told directly that the directors would not assist her in any way); *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 264–65 (1st Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973) (allegations of self-interest or bias may excuse demand); *Untermeyer v. Fidelity Daily Income Trust*, 79 F.R.D. 36, 42 (D. Mass.), *vacated*, 580 F.2d 22 (1st Cir.1978) (plaintiff should allege facts which show an "unmistakeable antagonism between the trustees and the corporate interests").

It is undisputed that Kamen failed to make a demand on the Fund's Board of Directors. Although the original complaint did not provide any excuse for this non-compliance with Rule 23.1, Kamen has corrected this error by filing an amended complaint which alleges that resort to the Fund's Board of Directors was not attempted because it would have been futile. Paragraph 17 of the Amended Complaint alleges the following facts in support of Kamen's futility claim:

(a) With respect to the claims asserted under § 36(b) of the Act, no such demand is required;

(b) The board of directors of the Fund consists of ten members. Of those, three are "interested" as defined by the Act; that is, they have a personal financial interest in KFS. In addition, the president of the Fund, John Hawkinson, was formerly president of KFS and is a stockholder of Kemper Corporation, KFS's parent. Furthermore, the so-called "non-interested" directors currently receive aggregrate remuneration of approximately $300,000 a year for serving as directors of the Fund and of all of the other funds in the Kemper group. They are dependent upon and subservient to KFS and Kemper Corporation, its parent;

(c) The proxy statement referred to in paragraph 13 above stated: "The accompanying proxy is solicited by the Board of Directors of the Fund ...", and indeed, the directors did vote, without dissent, to distribute the proxy statement to Fund shareholders. Any suit, such as the instant suit, brought to establish liability for the material false statements contained in that proxy statement would, if successful, tend to establish culpability and liability on the part of all of the directors of the Fund;

(d) Requiring the plaintiff to make a demand on the Fund or its directors to institute or prosecute this action would be futile. It would be tantamount to asking the directors to sue themselves. Moreover, were the directors to accept such an invitation and institute an action, the prosecution of the action would be in hostile hands inimical to its success;

(e) All of the directors, and the Fund itself, as well as its personnel and policies, are under the control of KFS and Kemper Corporation, its parent;

(f) In responding to the original complaint, the Fund, both in its answer and motion to dismiss, has sought the dismissal of the complaint on substantive grounds;

(g) Under all of the circumstances present in this case, application of a demand requirement would be inconsistent with the federal policy underlying § 20 of the Investment Company Act.

The court finds that, although subsection (a) correctly explains the applicability of Rule 23.1 to the § 36(b) claim, subsections (b) through (g) are insufficient to satisfy the pleading requirements of Rule 23.1.

Rule 23.1 requires a plaintiff to allege facts excusing her failure to make a demand "with particularity." This requirement " 'represents a deliberate departure from the relaxed policy of notice pleading promoted elsewhere in the Federal Rules.' " *Grossman v. Johnson*, 89 F.R.D. 656, 659 (D. Mass.1981), *affd.* 674 F.2d 115 (1st Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982) (*quoting Heit v. Baird*, 567 F.2d 1157, 1160 (1st Cir. 1977)). *See also Kaufman v. Kansas Gas & Electric Co.*, 634 F.Supp. 1573, 1578 (D.Kan.1986) (holding plaintiff to strict pleading requirements); *Atkins v. Tony Lama Co., Inc.*, 624 F.Supp. 250, 255 (S.D. Ind.1985) (conclusory allegations of "futility" insufficient); *Kaufman v. Safeguard Scientifics, Inc.*, 587 F.Supp. 486, 489 (E.D. Pa.1984) (Rule 23.1 requires "meticulous specification" of the facts surrounding plaintiff's failure to make a demand). As the following discussion illustrates, Kamen's generalized allegations of futility have been consistently rejected by the courts as inadequate under Rule 23.1.

Subsection (b) describes the composition of the Fund's ten-member board of directors. Kamen admits that only three of these directors are "interested" under the

Act.[13] The remaining seven members of the board are presumably "non-interested" directors.[14] The mere fact that the directors receive substantial remuneration for acting as directors does not, in and of itself, establish that they could not impartially review the merits of Kamen's excessive fee claim. If the fact that a director is paid for his services was sufficient to avoid Rule 23.1, Rule 23.1 would be rendered ineffective.

■ Furthermore, the fact that these directors assisted KFS in soliciting the allegedly misleading proxy statement does not obviate Kamen's duty to make a demand. The courts have consistently held that "mere approval of challenged conduct is insufficient to render the demand futile." *Lewis v. Anselmi*, 564 F.Supp. 768, 772 (S.D.N.Y.1983); *Atkins v. Tony Lama Co., Inc.*, 624 F.Supp. 250, 255 (S.D.Ind.1985); *Lewis v. Valley*, 476 F.Supp. 62, 64 (S.D.N.Y.1979). *See generally Lewis v. Graves*, 701 F.2d 245, 248-249 (2d Cir.1983), and cases cited therein. As the First Circuit aptly remarked, "It does not follow ... that a director who merely made an errone-ous business judgment in connection with what was plainly a corporate act will 'refuse to do [his] duty in behalf on the corporation if [he] were asked to do so.' Indeed, to excuse demand in these circumstances—majority of the board approval of an allegedly injurious corporate act—would lead to serious dilution of Rule 23.1." *In re Kauffman Mutual Fund Actions* 479 F.2d at 265 (citation omitted).[15]

Subsections (d) and (e) state no facts; they merely reiterate Kamen's conclusion of futility based on her conclusory claim that the entire Board is under the control of KFS and Kemper Corporation, its parent. Rule 23.1 requires Kamen to *particularize* her allegations of control. Kamen's complaint implicitly admits that the Board is composed of at least six disinterested directors. She has not presented the court with any information indicating that these directors are incapable of exercising independent judgment or that the three "interested" directors somehow control the outcome of all the Board's decisions. *See Kauffman*, 479 F.2d at 266. A plaintiff's mere speculation that the majority of the

---

13. The ICA provides that "No registered investment company shall have a board of directors more than 60 per centum of the members of which are persons who are interested persons of such registered company." 15 U.S.C. § 80a-10(a). Section 2(a)(19) of the Act defines an interested person as follows:

(19) "Interested person" of another person means—

(A) when used with respect to an investment company

(i) any affiliated person of such company,

(ii) any member of the immediate family of any natural person who is an affiliated person of such company,

(iii) any interested person of any investment adviser of or principal underwriter for such company,

(iv) any person or partner or employee of any person who at any time since the beginning of the last two fiscal years of such company has acted as legal counsel for such company,

(v) any broker or dealer registered under the Securities Exchange Act of 1934 or any affiliated person of a such a broker or dealer. . . . *Provided*, That no person shall be deemed to be an interested person of an investment company solely by reason of (aa) his being a member of its board of directors or advisory board or an owner of its securities, or (bb) his membership in the immediate family of any

person specified in clause (aa) of this proviso;
. . . .

15 U.S.C. § 80a-2(a)(19).

14. Plaintiff also alleges that the president of the Fund is a former president of KFS and a stockholder of KFS's parent, Kemper Corporation. The court questions the relevance of this information on the issue of a demand, since plaintiff does not allege that Hawkinson is even a member of the Fund's Board of Directors. The fact that an *officer* of the Fund had a former affiliation with KFS does not have any bearing on the number of "interested" directors because he would only participate in the Board's decision to pursue the action if he were a *director* of the fund.

15. The demand would not be excused even if Kamen had named the individual directors in her complaint. The courts have uniformly held that, absent allegations of bias or self-interest, naming the individual directors cannot obviate the demand requirement of Rule 23.1. *See generally Lewis v. Graves*, 701 F.2d 245, 249 (2d Cir.1983); *Lewis v. Curtis*, 671 F.2d 779, 785 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); *Lewis v. Sporck*, 612 F.Supp. 1316, 1322 (N.D. Cal.1985); *Kaufman v. Safeguard Scientifics, Inc.*, 587 F.Supp. 486, 489 (E.D.Pa.1984).

board would refuse to take corporate action is insufficient to satisfy Rule 23.1. *Nussbacher,* 518 F.2d at 879 (7th Cir.1976); *Atkins v. Tony Lama Co., Inc.,* 624 F.Supp. 250, 256 (S.D.Ind.1985).

■ In subsection (e) Kamen alleges that demand should be excused because the Fund has moved to dismiss the complaint on substantive grounds.[16] The futility of a demand should be gauged at the time the suit is commenced. *Grossman v. Johnson,* 674 F.2d 115, 123 (1st Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982); *Cramer v. GTE Corp.,* 582 F.2d 259, 276 (3d Cir.1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979); *Shlensky v. Dorsey,* 574 F.2d 131, 142 (3d Cir.1978); *Seidel v. Public Service Co. of New Hampshire,* 616 F.Supp. 1342, 1350 (D.N.H.1985). "It is clear that 'the filing of the complaint cannot be regarded as a demand to sue, for by starting the action [plaintiff has] ... usurped the field.' " 7C Wright, Miller & Kane, *Federal Practice & Procedure* § 1831, quoting *Lucking v. Delano,* 117 F.2d 159, 160 (6th Cir.1941). The fact that a corporation resists the suit or demands that the requirements of Rule 23.1 be met is insufficient to establish that the board would reject a demand if the plaintiff-shareholder had requested it to act. *See Gartenberg v. Merrill Lynch Asset Management, Inc.,* 91 F.R.D. 524, 527 (S.D. N.Y.1981); *Grossman v. Johnson,* 89 F.R.D. 656, 659 (D. Mass.1981). Kamen thrust the Fund into an adversary role when she instituted this action. She cannot use the fact that the Fund defended itself in this lawsuit to justify her own failure to comply with Rule 23.1 in the first place.

■ The demand requirement is a necessary prerequisite to all suits under Rule 23.1.[17] As the court in *Lewis v. Anselmi* noted,

> Rule 23.1 represents a strong statement of public policy which this court is bound to enforce. It has its historical origin in a perceived evil, the maintenance of strike suits by minority shareholders which impede corporate management at great cost and to little purpose except the enrichment of counsel, coupled also with unnecessary interference by outsiders with internal corporate affairs, which should have been administered at least in the first instance by those elected by the shareholders to do so.

564 F.Supp. 768, 772 (S.D.N.Y.1983). The court finds that Kamen's generalized allegations of futility, unsupported by any specific facts, are insufficient to excuse her failure to approach the Fund's Board of Directors before she filed this lawsuit. Accordingly, the court dismisses Kamen's § 20(a) claim for failure to comply with Rule 23.1.

### Motion To Strike Jury Demand

The dismissal of Kamen's § 20(a) claim does not affect her § 36(b) claim, which KFS apparently concedes is sufficient for the purposes of Fed.R.Civ.P. 12(b)(6).[18] In addition to the dismissal of the Section 20(a) claim, KFS' motion also seeks to strike Kamen's jury demand on the ground that the Seventh Amendment's right to jury "in actions at law" does not extend to § 36(b) claims, which are essentially equitable in nature.

Section 36(b) of the ICA, 15 U.S.C. § 80a–35(b), creates a cause of action on behalf of a security holder of an investment company to recover excessive fees paid to the investment company's advisor. Subsection (3) of the Act limits this cause of action by providing:

---

**16.** The Fund has joined Kemper in its motion to dismiss Kamen's § 20(a) claim for failure to make a demand and for failure to state a cause of action.

**17.** This court echoes the Seventh Circuit's query in *Nussbacher:* "It may be wondered why counsel would not almost routinely take the course of making a formal demand, diligently and in good faith, and in so doing inform the board adequately of the basis of the claim he was asking them to enforce." 518 F.2d at 877.

**18.** KFS recently filed a motion for summary judgment on the issue of whether Kamen can fairly and adequately represent the other shareholders in this action.

No such action shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments. No award of damages shall be recoverable for any period prior to one year before the action was instituted. Any award of damages against such recipient shall be limited to the actual damages resulting from the breach of fiduciary duty and *shall in no event exceed the amount of compensation or payments received from such investment company, or the security holders thereof, by such recipient.*

15 U.S.C. § 80a–35(b)(3) (emphasis supplied). The Seventh Circuit has never discussed the right to a jury trial in the context of a Section 36(b) action. To the court's knowledge, only two circuits have addressed the issue, both concluding that a plaintiff in these actions is not entitled to a jury trial on his Section 36(b) claims. *See In re Evangelist*, 760 F.2d 27, 29–30 (1st Cir.1985); *In re Gartenberg*, 636 F.2d 16, 17–18 (2d Cir.1980); *cert. denied*, 451 U.S. 910, 101 S.Ct. 1979, 68 L.Ed.2d 298 (1981).

*See also Weissman v. Alliance Capital Management Corp.*, 84 Civ. 8904 slip op. at 5–6 (S.D. N.Y. Nov. 26, 1985) [Available on WESTLAW, DCT database], *pet. for mandamus denied sub nom. In re Weissman*, 788 F.2d 5 (2d Cir.1986); *Tarlov v. Paine Webber Cashfund, Inc.*, 559 F.Supp. 429, 441 (D.Conn.1983); *Jerozal v. Cash Reserve Management, Inc.*, [1982–83 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,019 at 94,827 (S.D. N.Y. 1982); *Markowitz v. Brody*, 90 F.R.D. 542, 547–48 (S.D. N.Y. 1981).

■ These courts all reason that, since § 36(b) involves a claim for breach of fiduciary duty and limits damages to restitution of excessive fees, the action is essentially in equity and therefore not covered by the Seventh Amendment. *Evangelist, supra; Gartenberg, supra.* In the present case, Kamen's Section 36(b) claim is identical to those addressed in the cases listed above. She has not presented the court with any authority rejecting the analysis of the First and Second Circuits on this narrow issue.[19] This court agrees with the controlling weight of authority that Section 36(b) creates restitutionary relief for fiduciary breach, which is traditionally addressed

**19.** Kamen argues that § 36(b)'s reference to "damages," and her request for "damages" renders her claim an action at law. This argument has been rejected by every court that has considered it. With respect to the fact that the statute uses the word "damages," the *Gartenberg* court held:

> [I]t seems likely from the context that Congress was using 'damages' merely as a shorthand for 'recovery of money,' not as a legal term of art. Since ... not all claims for monetary relief are legal in nature, the use of the term 'damages' is not persuasive in this instance. In particular, given the repeated statement in the legislative history that actions under 36(b) are equitable, to be administered on equitable standards, it would seem impossible to conclude from the use of the word 'damages' that Congress thereby provided for a trial by jury.

*Gartenberg v. Merrill Lynch Asset Management, Inc.*, 487 F.Supp. 999, 1006 (S.D.N.Y.), *mand. denied sub nom. In re Gartenberg*, 636 F.2d 16 (2d Cir.1980), *cert. denied*, 451 U.S. 910, 101 S.Ct. 1979, 68 L.Ed.2d 298 (1981). *See also In re Evangelist*, 760 F.2d 27, 30 (1st Cir.1985).

Although the *Evangelist* court was unequivocal in its denial of a right to a jury trial, the *Gartenberg* court qualified its decision in the

last paragraph: "Our decision is limited, of course, to the facts of this case. We leave for another day a determination as to the right of a jury trial of a plaintiff making a bona fide claim for damages." *In re Gartenberg*, 636 F.2d at 18. Kamen argues that because her complaint seeks damages, she falls within this *Gartenberg* caveat. The Second Circuit has never explained this final comment to its opinion; however, the court finds that Kamen's Section 36(b) claim is no different than that advanced in *Gartenberg*. The fact that her complaint requests "damages" does not automatically render her claim an action at law. As the *Evangelist* court noted,

> [I]n our view, the right to jury trial cannot turn on the simple substitution of a different word. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477–78, 82 S.Ct. 894, 899–900, 8 L.Ed.2d 44 (1962) ('the constitutional right to a trial by jury cannot be made to depend on the choice of words used in the pleadings.').... Otherwise, any equitable action for money, say for restitution, could become a legal action by the use of the word 'damages' in place of the word 'restitution.'

760 F.2d at 31. The semantics of Kamen's complaint cannot reign over the substance of her Section 36(b) claim, which is an action seeking restitution for excessive fees paid to KFS.

by the courts of equity.[20] Accordingly, the court finds that plaintiff has no right to jury trial for her § 36(b) claims, and grants KFS' motion to strike Kamen's jury demand.

### Conclusion

In the present case, although Kamen alleged sufficient facts to state a claim under § 20(a), she failed to comply with Rule 23.1's important demand requirement, and her proffered excuse for this non-compliance is insufficient to satisfy the futility exception to the rule. Accordingly, the court dismisses Kamen's § 20(a) claim for failure to make a demand on the Fund's Board of Directors. In addition, the court finds that Kamen is not entitled to a jury trial on her § 36(b) claim, and grants KFS' motion to strike her jury demand.

---

**20.** Kamen also argues that Section 44 of the ICA, 15 U.S.C. § 80a–43, refutes KFS' argument regarding the availability of jury trials in § 36(b) suits. Section 44 confers jurisdiction on the federal courts over "all suits in equity and actions at law brought to enforce any liability or duty created by" the ICA, and authorizes the SEC to "intervene as a party in any action or suit to enforce any liability or duty created by, or to enjoin any non-compliance with, Section 36(b) ..." Kamen maintains that these provisions indicate that actions under § 36(b) can be characterized as suits at law, thereby entitling her to a jury trial. As KFS correctly notes, however, this language merely permits the SEC to intervene in § 36(b) actions; it does not change the equitable nature of the action or the remedy that the plaintiff seeks. The gist of an action under § 36(b) is a suit for an accounting, and the remedy is limited by statute to restitution of the excessive fees paid. Under the circumstances, this action is properly characterized as one in equity, in which Kamen is not entitled to a jury trial.