In re Irving L. GARTENBERG,
Petitioner.

No. 254, Docket 80–3034.

United States Court of Appeals,
Second Circuit.

Petition for writ of mandamus filed
July 3, 1980.

Decided Oct. 9, 1980.

Pomerantz, Levy, Haudek & Block, New York City, for petitioner.

Before VAN GRAAFEILAND and NEWMAN, Circuit Judges, and NEAHER, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

Petitioner is a shareholder of Merrill Lynch Ready Assets Trust, a no–load, diversified, open–end investment company. In March 1980 he commenced a derivative action in the United States District Court for the Southern District of New York against Merrill Lynch Asset Management, Inc., the investment adviser of the Trust, and Merrill Lynch, Pierce, Fenner & Smith, Inc., the parent company of the adviser. The gravamen of his complaint was that the Trust adviser had been charging exorbitant fees and that this constituted a breach of its fiduciary duties under section 36(b) of the Investment Company Act of 1940 *as amended*, 15 U.S.C. § 80a–35(b). Petitioner demanded that the adviser and its parent company be required "to account to the Trust for all excessive advisory fees paid to the Adviser by the Trust up to the date of judgment and to repay such fees to the Trust."

Petitioner's demand for a jury trial was denied by Judge Pollack in an opinion reported at 487 F. Supp. 999. Petitioner now seeks mandamus directing the district judge to grant his demand. For reasons that follow, the petition is denied.

When Congress in 1967 set about to revise the Investment Company Act so as to

* The Honorable Edward R. Neaher, United States District Judge of the Eastern District of New York, sitting by designation.

eliminate excessive charges for advisory services, members differed as to how this best could be done. The original bills introduced in the Senate and the House provided that the propriety of charges should be determined by the test of "reasonableness". S. Rep. No. 91–184, 91st Cong., 2d Sess., *reprinted in* [1970] U.S. Code Cong. & Ad. News 4902. Influenced in part by industry opposition to the "reasonableness" standard, Congress shifted to the standard of "fiduciary duty" that is in the present Act.[1] This standard requires no showing of tortious wrongdoing, but is concerned solely with fairness and equity, the traditional earmarks of fiduciary loyalty. 15 U.S.C. § 80a–35(b)(1).

However, although Congress created what it clearly recognized to be an equitable cause of action for breach of fiduciary duty, *see* S. Rep. No. 91–184, U.S. Code Cong. & Ad. News, *supra*, at 4911, it made no express provision in the statute for non-jury enforcement. Whether the jury–non-jury issue was "consistently ignored", as one writer suggested at the time,[2] or whether Congress felt that explicitness on this issue was either unnecessary or unwise, the fact remains that the revised statute is silent on this point. Petitioner contends that, because the statute does contain temporal and monetary limitations on the recovery of "damages",[3] any action under this statute must be one at law for damages, which the Seventh Amendment requires to be tried by a jury. We disagree.

The possibility that an action for damages may be brought under section 36(b) does not preclude all other remedies. An action for restitution may well fall within the meaning of the phrase "or other relief" contained in section 36(b)(3), 15 U.S.C. § 80a–35(b)(3). "A cause of action for restitution is a type of the broader cause of action for money had and received, a remedy which is equitable in origin and function." *Atlantic Coast Line R. R. v. Florida,* 295 U.S. 301, 309, 55 S.Ct. 713, 716, 79 L.Ed. 1451 (1935). *See Baltimore & Ohio R. R. v. United States,* 279 U.S. 781, 785, 49 S.Ct. 492, 493, 73 L.Ed. 954 (1929); *SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 94–97 (2d Cir. 1978). Restitution is a remedy distinct from damages and requiring different proof. *Greenwood County v. Duke Power Co.,* 107 F.2d 484, 487 (4th Cir. 1939). In order to prevail, a plaintiff need show only "that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it." *Atlantic Coast Line R. R. v. Florida, supra,* 295 U.S. at 309, 55 S.Ct. at 716.

Because an action under section 36(b) may be brought by either the SEC or a security holder, it is unlikely that Congress intended the action to be one for damages only. When the Commission sues, it does so in the public interest. Actions seeking disgorgement of profits are an effective and seemly method by which the Commission enforces the securities laws. *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1104 (2d Cir. 1972); *SEC v. Petrofunds, Inc.,* 420

1. Section 36(b) provides in part that "the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the securities holders thereof, to such investment adviser or any affiliated person of such investment adviser." 15 U.S.C. § 80a–35(b).

2. *See* Rottenberg, *Developing Limits on Compensation of Mutual Fund Advisors,* 7 Harv.J. Legis. 309, 353–54 (1970).

3. Section 36(b)(3) provides as follows:
No such action shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments. No award of damages shall be recoverable for any period prior to one year before the action was instituted. Any award of damages against such recipient shall be limited to the actual damages resulting from the breach of fiduciary duty and shall in no event exceed the amount of compensation or payments received from such investment company, or the security holders thereof, by such recipient.
15 U.S.C. § 80a–35(b)(3).

F. Supp. 958 (S.D.N.Y. 1976). The pursuit of private actions for damages does not seem to be an appropriate role for this governmental body. *See* 4 Bromberg, *Securities Law*, § 10.2(2).

In *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 287–88, 61 S.Ct. 229, 233, 85 L.Ed. 189 (1940), Justice Murphy, writing for a unanimous Court, said:

> We think the Securities Act does not restrict purchasers seeking relief under its provisions to a money judgment. On the contrary, the Act as a whole indicates an intention to establish a statutory right which the litigant may enforce in designated courts by such legal or equitable actions or procedures as would normally be available to him. Undoubtedly any suit to establish the civil liability imposed by the Act must ultimately seek recovery of the consideration paid less income received or damages if the claimant no longer owns the security. § 12(2); 15 U.S.C. § 77(*l*), (2). But § 12(2) states the legal consequences of conduct proscribed by the Act; it does not purport to state the form of action or procedure the claimant is to employ.
>
> . . . If petitioners' bill states a cause of action when tested by the customary rules governing suits of such character, the Securities Act authorizes maintenance of the suit, providing the bill contains the allegations the Act requires. That it does not authorize the bill in so many words is no more significant than the fact that it does not in terms authorize execution to issue on a judgment recovered under § 12(2).

■ To determine whether petitioner's action is in law or equity, we must look to the relief which he seeks, not the statute which gives him a right to sue. *Myzel v. Fields*, 386 F.2d 718, 741 (8th Cir. 1967), *cert. denied*, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968); *Straley v. Universal Uranium & Milling Corp.*, 289 F.2d 370, 372–73 (9th Cir. 1961). We must examine the nature of the issue to be tried in the light of the historic legal and equitable practices applicable to issues of a similar nature. *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970).

■ The relationship between the Trust and its adviser was a fiduciary one in the traditional sense of the word. *Rosenfeld v. Black*, 445 F.2d 1337, 1342–44 (2d Cir. 1971), *cert. dismissed*, 409 U.S. 802, 93 S.Ct. 24, 34 L.Ed.2d 62 (1972). Section 36 merely established the fiduciary duties arising out of this relationship as a federal standard. *Burks v. Lasker*, 441 U.S. 471, 481–82 n. 10, 99 S.Ct. 1831, 1839 n. 10, 60 L.Ed.2d 404 (1979). The issue in this case involves the equitable inquiry whether the Trust adviser violated its fiduciary obligations by charging an exorbitant fee. If it did, the excessive portion of the fee must be returned.[4] If the excessive portion was paid to an "affiliated person" of the adviser, equity will trace it and compel its repayment. *Halligan v. Standard & Poor's/Intercapital, Inc.*, 434 F. Supp. 1082 (E.D.N.Y. 1977).

■ "The remedial 1970 amendment of [section 36] added a subsection (b) which explicitly granted a private right of action to recover unreasonable compensation paid by a fund to its investment adviser." *Tannenbaum v. Zeller*, 552 F.2d 402, 417 (2d Cir.), *cert. denied*, 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977). This is the relief which petitioner seeks. He alleges no damage and seeks no damages. He is not entitled to a jury trial. *See Maldonado v. Flynn*, 477 F. Supp. 1007, 1009–11 (S.D.N.Y. 1979), *petition for writ of mandamus denied sub nom. In re William Maldonado*, No. 79–3072 (2d Cir., October 12, 1979).

Our decision is limited, of course, to the facts of this case. We leave for another day a determination as to the right to a jury trial of a plaintiff making a bona fide claim for damages.

Petition for mandamus denied.

---

4. Section 36(b) has a built-in one year statute of limitations. *See* footnote 3, *supra*.