Jeffrey **KRINSK**, Plaintiff,

v.

**FUND ASSET MANAGEMENT, INC.,** Merrill Lynch Asset Management, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Merrill Lynch & Co., Inc., and CMA Money Fund, Defendants.

No. 85 Civ. 8428 (JMW).

United States District Court, S.D. New York.

March 4, 1987.

Richard M. Meyer of Milberg Weiss Bershad Specthrie and Lerach, New York City, for plaintiff.

James K. Manning, Paul Windels, III, Amy J. Leeson of Brown and Wood, New York City, for defendant CMA Money Fund.

James N. Benedict, Mark Holland of Rogers & Wells, New York City, for defendant Fund Asset Management Inc.

## OPINION

WALKER, District Judge:

### INTRODUCTION

Plaintiff Jeffrey Krinsk brings this action on behalf of the CMA Money Fund ("Fund"), of which he is a shareholder, against Defendants Fund Asset Management, Inc., ("FAM"), Merrill Lynch Asset Management, Inc., ("MLAM"), Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), Merrill Lynch & Co., Inc., ("ML") and the Fund. In his amended complaint Krinsk claims in substance that the defendants, in violation of their fiduciary duties, have reaped excessive fee payments from the Fund. He alleges specific violations of §§ 12(b), 15, 20, and 36(b) of the Investment Company Act of 1940 as amended (the "Act"), 15 U.S.C. § 80a–1 *et seq.*, and demands a jury trial.

The defendants have moved to dismiss all of the plaintiff's claims save that under § 36(b). They argue that no private cause of action exists under § 12(b) or § 20 and, further, that since the § 15 claim complains of a fee paid directly by shareholders to

Merrill Lynch it is not recoverable in a derivative action and, in any event, fails to state a claim upon which relief may be granted. Defendants also have moved to strike the plaintiff's jury trial demand.

### The Parties and Their Relationships

The Fund, it is claimed, is the largest money market fund in existence with assets exceeding $18 billion. Defendant FAM is the investment advisor for the Fund. It is a wholly-owned subsidiary of defendant ML. In exchange for investment advisory and management services provided to the Fund and its shareholders, FAM receives an investment advisory fee that is based on a percentage of the Fund's net assets.

Defendant Merrill Lynch, another subsidiary of ML, is a securities broker which, since September 1, 1983, has provided distribution and shareholder services to the Fund and its shareholders in exchange for a distribution fee that is also based on a percentage of the Fund's net assets.

Merrill Lynch also sponsors something it calls the Cash Management Asset Program ("CMA Program"). The CMA Program links together three components to offer "integrated financial services" to participants. Each member is entitled to (a) a securities margin account, (b) one of three money market fund accounts (the CMA Money Fund, the CMA Government Securities Fund, or the CMA Tax-Exempt Fund) and a federally insured money market deposit account and (c) a Visa card and checking account. Each CMA Program participant then receives a comprehensive monthly statement that details the activity in his account for that month. Each such participant, regardless of whether he is a shareholder in the Fund, is charged an annual $65 fee by Merrill Lynch to participate in the CMA Program.

### Claims and Proceedings to Date

Krinsk's original complaint (all of which survived in the amended complaint) alleged

that defendants violated §§ 36(b) and 20 of the Act and demanded a jury trial. Its First Claim asserted that FAM and Merrill Lynch charged the Fund excessive advisory and distribution fees, respectively, in violation of their fiduciary duties to the Fund and its shareholders under § 36(b). The Second Claim asserted that on or about July 26, 1984, the defendants caused the Fund to send to its shareholders a materially false and misleading proxy statement for the August 31, 1984 annual meeting of shareholders. Plaintiff claims that this proxy statement identified comparative fees charged by the defendants for services to other funds, and stated that the fee charged to the CMA Money Fund was averaging [1] at approximately .38 per cent of the Fund's asset value, but omitted to state that the fee for the only other fund of comparable size, the Merrill Lynch Ready Assets Trust, was averaging at approximately .34 per cent. The plaintiff also claims that the proxy statement failed to disclose other pertinent facts relating to the defendants' profitability. The complaint alleges that based on the deficient proxy materials, the Fund's shareholders voted to approve the continuance of the existing investment advisory agreement and infers that, had there been full disclosure, they would not have done so. By way of relief the original complaint seeks "damages" for these alleged violations of § 36(b) and § 20. Addressing this original complaint, the defendants moved to strike the jury trial demand and to dismiss the Second Claim on the grounds that § 20 of the Act does not create a private right of action in the context of a claim for excessive advisory fees.

While this motion was *sub judice*, the plaintiff filed an amended complaint. He added to the § 36(b) claim an allegation that the service fees (the $65 recurring charge to CMA Program participants) paid to Merrill Lynch were excessive. He also

---

**1.** The average is derived by dividing the total asset value into the total fees charged on the various increments of the Fund. This is based on a fee schedule of .5 per cent up to $500 million, .425 per cent for the next $500 million and .375 per cent for assets over $1 billion.

added two further claims for relief under § 12(b) and § 15 of the Act and continued to demand a jury trial as to all claims.

The Third Claim alleges that the defendants violated § 15 of the Act by failing to describe in the investment advisory contract the annual $65 service charge imposed upon each shareholder by Merrill Lynch for participation in the CMA Program. The Fourth Claim alleges that the defendants violated § 12(b) of the Act because the Fund pays distribution fees to Merrill Lynch and its employees on the basis of the average daily net assets of the Fund instead of whether or not they have sold Fund shares. As to all four claims, Krinsk requests an award of "damages" to the Fund.

Upon the filing of the amended complaint, the defendants promptly moved to dismiss the Third and Fourth Claims. They argue that Krinsk's Third Claim under § 15 challenges a service fee that is paid directly to Merrill Lynch by each shareholder individually for participation in the CMA Program and not by the Fund, and that, therefore, the claim may not be brought derivatively on behalf of the Fund. Alternatively, they argue that the fee is not compensation for advisory services and thus does not fall within the scope of § 15 requirements for inclusion in the investment advisory contract. They challenge plaintiff's fourth claim under § 12(b) on the grounds that no private right of action exists under that section in the context of this § 36(b) action. They also persist in their contention that no claim asserted by the plaintiff entitles him to a jury trial.

## DISCUSSION

### I. *Private Causes of Action Under § 20 and § 12(b)*

The question of whether there exists a private right of action under a statute is "basically a matter of statutory construction." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979). The Supreme Court in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975) out-

lined four factors to be considered in deciding whether to find a private right of action where none was specifically provided for:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). In cases decided since *Cort v. Ash,* the Supreme Court has made it clear that these factors are to be used in order to focus on Congressional intent. *See, Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1978); *Transamerica,* 444 U.S. at 23–24, 100 S.Ct. at 249.

Mindful of these basic principles, the Court turns to whether Congress may be held to have intended to authorize private causes of action under § 12(b) and § 20 of the Act in the context of an action for recovery of excessive advisory fees under § 36(b).

### *The Investment Company Act of 1940 as Amended*

Congress enacted the Act to curb perceived abuses in the investment company industry based, in part, upon the lack of arms-length dealing between investment companies and their advisors which provided opportunities for misappropriation of company assets by advisors. The Act's "findings and declaration of policy" includes the statement:

... that the national public interest and the interest of investors are adversely affected ... when investment compa-

nies are ... operated ... in the interest of ... investment advisors ... or other affiliated persons thereof, [or] in the interest of ... brokers or dealers ... 15 U.S.C. § 80a–1.

The Act set up a regulatory scheme under the Securities and Exchange Commission ("SEC") whereby investment company managers are required to manage for the benefit of the investors. For example, the Act requires that at least 40 per cent of the investment company's directors be "disinterested." 15 U.S.C. § 80a–10. Through § 20, the Act controls proxy solicitation. 15 U.S.C. § 80a–20. It also governs contracts between the Fund and both investment advisors and underwriters. *See e.g.* 15 U.S.C. § 80a–15.

For the past quarter century the courts have also permitted private litigants to sue under certain provisions of the Act as a means of affording protection to individual investors and to supplement the SEC's enforcement efforts. In *Brown v. Bullock,* 294 F.2d 415 (2d Cir.1961), Judge Friendly wrote that an aggrieved investor complaining of excessive advisory fees could maintain a suit under § 37 upon a theory of unlawful conversion of the company's assets and under § 15 to ensure that the required annual evaluation by company directors of the advisory and underwriting contracts be a substantive one. *See also, Moses v. Burgin,* 445 F.2d 369, 373 (1st Cir.), *cert. denied,* 404 U.S. 994, 92 S.Ct. 532, 30 L.Ed.2d 547 (1971); *Taussig v. Wellington Fund, Inc.,* 313 F.2d 472, 476 (3d Cir.1963); *Esplin v. Hirschi,* 402 F.2d 94, 103 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).[2]

In 1970, following a period of explosive growth in the investment company industry, Congress enacted comprehensive amendments to the Act. Among these, a new § 36(b) addressed the problem of compensating those who provided services to the investment company where the providers enjoyed a close relationship to the company, through affiliation or overlapping directors, such as would tend to eliminate arms-length bargaining over the fees being charged.

Section 36(b) created a fiduciary duty from the investment advisor and its affiliates to the investment company with respect to the former's receipt of compensation. It authorized a suit to enforce that duty both by the SEC and by a security holder derivatively on behalf of the investment company. In determining whether the the advisor has breached its fiduciary duty, the court is to consider all forms of compensation, including fees received from shareholders as well as "fall out" benefits (e.g. related accounts and use of the "float"). *Gartenberg v. Merrill Lynch Asset Management, Inc.,* 694 F.2d 923 (2d Cir.1982). Section 36(b) contains specific limitations in subsection (3). "Damages" may only be recovered from the entity to whom the compensation was paid; in no event may they exceed the amount of such compensation; and such damages are not recoverable for a period earlier than the year preceeding the filing of the complaint.

█ Congressional purpose in creating § 36(b) and the explicit enforcement mechanism of § 36(b) requires the Court to consider to what extent this provision provides an exclusive remedy where payment of excessive fees is alleged. The statute itself is silent on the point as is its contemporaneous legislative history.[3] However, nothing therein purports to undo the private rights of action that courts had previously found

---

2. Cases implying private causes of action under provisions of the Act prior to 1980 also include: *Tannenbaum v. Zeller,* 552 F.2d 402, 417 (2d Cir.), *cert. denied,* 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977); *Levitt v. Johnson,* 334 F.2d 815, 819 (1st Cir.1964), *cert. denied,* 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556 (1965); *Cogan v. Johnston,* 162 F.Supp. 907, 909 (S.D.N.Y.1958) (Edelstein, J.) (denying motion to dismiss).

3. This Court rejects any argument that the Act's jurisdictional section, § 44 creates private rights of action. *See, Touche Ross v. Reddington,* 442 U.S. 560, 577, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979) (discussing § 27 of the Securities Exchange Act of 1934).

to exist prior to 1970 or to limit the creation of future ones.

To be sure, recent Supreme Court decisions have eschewed the creation of new private rights of action under the securities laws. *Transamerica Mortgage Investors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (§ 206 of the Investment Advisors Act); *Touche Ross v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (§ 17(a) of the Securities and Exchange Act). However it does not appear that these decisions have jeopardized implied private rights that have been previously established, *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983), including one under § 20 of the Act tacitly recognized in *Galfand v. Chestnutt Corp.*, 545 F.2d 807, 813 (2d Cir.1976).[4]

In *Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir.1981) (Friendly, J.) the Court of Appeals upheld a fund investor's right to sue fund directors affiliated with the investment advisor for breach of their fiduciary duty to inform disinterested directors of material information. The court reached this result despite the fact that the defendants' actions were motivated by a desire to increase advisory fees. Judge Friendly, after considering *Transamerica, supra*, noted that the Supreme Court had not negated an implied private right of action under the Investment Company Act and stated that "we do not think § 36(b) was intended to negate implied causes of action which the courts have found under sections of the Act other than § 36." *Fogel*, 668 F.2d at 111. *See also, Tannenbaum v. Zeller*, 552 F.2d 402, 417 (2d Cir.1977). However, Judge Friendly remarked:

> We might agree with defendants that § 36(b), with the severe limitations of subsection (3), constitutes the exclusive

remedy insofar as a private claim alleges solely that compensation of an advisor subsequent to ... the effective date of § 36(b), is so excessive in the sense of surpassing any reasonable relation to the services rendered that its payment is a breach of fiduciary duty.

*Id.* at p. 112.

■ From the foregoing, this Court must conclude that, at least in the Second Circuit, a private right of action may exist under the Investment Company Act independent of § 36(b) even where excessive advisory fees are implicated in the non-§ 36(b) claim, except where such claim amounts to nothing more than a claim for recoupment of excessive compensation such as Congress intended to be brought under § 36(b). Put another way, a plaintiff may not escape the strictures of § 36(b)(3), by merely characterizing his § 36(b) claim as arising under a different section.

### (a) *A Private Right of Action Under § 20*

■ Although the plaintiff's § 20 claim is closely related to his assertion that fees paid to FAM are excessive, it goes further. Its essence is that the defendants misled the shareholders who voted to approve the advisory agreement by omitting material facts from the proxy statement. The underlying character of the § 36(b) and § 20 claims is different and the facts that plaintiff must prove to show a violation of § 20 are distinct from the facts needed to prove a violation of § 36(b). Further, the ills sought to be remedied differ as between § 36(b) and § 20. The latter is directed to the need by those voting on management issues, including advisory agreements, for accurate and adequate information with which to make informed decisions; the former addresses the particular problem of

---

4. The House Report accompanying the 1980 amendments to the Act states that "Congress has long taken the view that private rights of action for violations of the federal securities laws are a necessary adjunct to the Commission's enforcement efforts." H.R.Rep. No. 96–1341, 96th Cong., 2d Sess. 28, reprinted in 1980 U.S. Code Cong. & Ad. News 4800, 4810. While such language is too general to be taken as supporting the creation of any specific right of action, it does support the conclusion that Congress has acquiesced in private rights previously found. The report goes on to encourage the creation of private rights of action under the 1980 legislation which is not at issue here.

compensation agreements in the non-disinterested context of the advisory relationship.

Finally, there is every indication in the legislative history that Congress wished the system for proxy regulation under § 20 to parallel that under § 14 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n. The Senate Report states:

> to assure uniformity of interpretation and administration as between that act [the Securities Exchange Act of 1934] and the present bill, § 20(a) of the bill has been so drafted as to follow verbatim § 14(a) of the Securities Exchange Act, with only slight modifications of language as are necessary because of the special classes of companies to which § 20(a) applies.

S.Rep. No. 76–1175, 76th Cong., 3d Sess. 17 (1940). For nearly a quarter century, implied causes of action have been permitted under § 14(a) of the Securities and Exchange Act of 1934. *J.I. Case Co. et al. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Under such circumstances, to deny a private right of action under § 20 would frustrate a long-standing regulatory scheme in the proxy area in which SEC enforcement is supplemented by private suits.[5]

The defendants argue that *Gartenberg v. Merrill Lynch Asset Mgt., Inc.*, 528 F.Supp. 1038 (S.D.N.Y.1981), aff'd 694 F.2d 923 (2d Cir.1982), cert. denied, 461 U.S. 906, 103 S.Ct. 1877, 76 L.Ed.2d 808 (1983) (*"Gartenberg I"*), forecloses a private right of action under § 20. In *Gartenberg I*, Judge Pollack dismissed a § 20 claim raised by one of the two plaintiffs after the trial as "lacking merit, not asserted and not proved." However, he briefly addressed the § 20 claim on the merits "for the sake of completeness" and concluded that the alleged omission was not material and that in any event § 20 does not establish a private right of action in the context of a claim to recover excessive advisory fees. *Gartenberg I*, 528 F.Supp. at 1067. In

affirming this decision, the Court of Appeals did not specifically address the private right of action question but rather concluded that the dismissal of the § 20 claims were justified as "not having been presented to the district court for adjudication" and that in any case, for the reasons stated by the district court "they are meritless." *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923, 934 (2d Cir.1982).

The *Gartenberg I* District Court's comment eschewing a private right of action under § 20 was dicta. Moreover, in *Gartenberg v. Merrill Lynch Asset Management Inc.*, 573 F.Supp. 1293 (S.D.N.Y.1983) (*"Gartenberg II"*) the same judge decided a § 20 claims on the merits. Thus it is clear not only that Judge Pollack did not ground his decision in *Gartenberg I* on the lack of a § 20 private right action, but also that a § 20 claim may be asserted together with a claim under § 36(b).

This Court's view of how the § 20 private right of action fared in the *Gartenberg* litigation is shared by Judge Ward. In *Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 622 F.Supp. 169 (S.D.N.Y. 1985), after carefully evaluating the legislative history of Section 36(b), the *Gartenberg* opinions, and the purposes of § 20, he concluded that a private suit may be asserted under § 20 even in the context of a claim for relief under § 36(b). He remarked that,

> particularly where, as here, the challenged claim involves alleged violations of the SEC's proxy rules, it would be imprudent and unrealistic to view § 36(b) as a substitute for the implied right of action previously recognized by the Second Circuit under § 20(a). Both the terms of the statute and the case law interpreting it demonstrate that § 36(b) was not designed to provide redress to mutual fund shareholders for material misstatements in or omissions from proxy statements.

---

**5.** Rule 20a–1, 17 C.F.R. 270.201–1, promulgated by the SEC § 20, specifically incorporates the regulations and standards of § 14(a) of the 1934 Act and the rules thereunder.

*Id.* at 177. *Compare, Tarlov v. Paine Webber Cashfund, Inc.,* 559 F.Supp. 429 (D.Conn.1983). *But see Kamen v. Kemper Financial Services, Inc.,* 85 Civ. 4587 (N.D.Ill., E.D., 2/2/87) [Available on WESTLAW, DCTU database].

Accordingly, this Court denies defendants' motion to dismiss the plaintiff's claim under § 20.

### (b) *A Private Right of Action Under Section 12(b)*

■ Unlike plaintiff's § 20 claim, his claim under § 12(b)[6] is indistinguishable from his § 36(b) claim. The plaintiff alleges that by calculating Merrill Lynch's distribution fee as a percentage of the assets in the Fund regardless of the number, if any, of securities sold, the defendants have violated Rule 12b–1. The essence of plaintiff's § 12(b) claim appears to be that the fee should have been related in some way to the sales themselves and that the failure to do this resulted in an excessive fee to Merrill Lynch. This is the type of claim covered by § 36(b) and, indeed, plaintiff recognized as much by including the distribution fee claim as part of his § 36(b) action. Further common identity of the claims under § 36(b) and § 12(b), where the core question is excessiveness of the fees, appears from the fact that § 36(b)'s fiduciary duty standard is explicitly referenced in Rule 12b–1.

There appears to be no basis for holding that Congress intended a private right of action under § 12(b) in a fee case such as this, where the plaintiff has been expressly granted an adequate remedy under § 36(b).

Accordingly, since plaintiff's distribution fee claim lies under § 36(b), he may not evade the limitations of § 36(b)(3) by bringing the same claim under § 12(b). The Fourth Claim under § 12(b) is accordingly dismissed.

This Court need not decide whether § 12(b) would afford a private remedy in a context other than where plaintiff has a remedy under § 36(b).[7] The Court holds only that a plaintiff may not circumvent the procedural limitations of § 36(b), by dressing an identical claim for relief in the language of § 12(b).[8]

### II. *The Derivative § 15 Claim*

■ Section 15 of the Act provides that an investment advisor may service an investment company only pursuant to a written contract in which the terms of compensation are precisely set forth. In his Third Claim for relief, plaintiff alleges that the defendants violated this provision since the contract between FAM and the Fund does not set forth that Merrill Lynch, the Fund's distributor, unilaterally charges each shareholder $65 per year as a members of the CMA program. Plaintiff has brought this claim derivatively, on behalf of the Fund, and seeks recovery, by way of restitution, of the service charge into the Fund.

The $65 annual service charge by Merrill Lynch is not confined to Fund shareholders, rather it is levied on *all* CMA Program participants, whether or not they are invested in the Fund, and it covers the servicing of that participation including the opening and maintenance of the various accounts and preparation and furnishing of

**6.** Section 12(b) prohibits an investment company from acting as a distributor of its own securities unless it complies with regulations promulgated thereunder by the SEC. Rule 12(6)–1, 17 C.F.R. 270.12(b)–1, defines the circumstances in which an investment company may act as an underwriter of its own securities and regulates distribution plans entered into between investment companies and underwriters. Under Rule 12b–1, the investment company directors are held to the fiduciary standards of § 36 when they consider whether to impliment or continue a distribution plan.

**7.** See *Meyer v. Oppenheimer Management Corp.,* 764 F.2d 76, 85 (2d Cir.1985) noting that "a

substantial question arises whether a private right of action exists for any violation of the Rule or any violation of a plan approved pursuant to the Rule."

**8.** The Court also notes that the plaintiff tacked on his claim for relief under § 12(b) as a late addition in an apparent attempt to circumvent the rule in this Circuit that § 36(b) does not entitle a plaintiff to a jury trial. Although it is not necessary to decide the issue, the Court can discern no basis for concluding that the jury issue here would be decided differently under § 12(b) than under § 36(b) where both claims seek equitable restitution.

the comprehensive monthly statement. In no respect is it compensation paid by the Fund for services rendered to the Fund.

Plaintiff's claim under § 15 belongs not to the Fund, but to the shareholders. It is they who, the plaintiff alleges, have been wrongfully caused to pay the service fee. The Fund has no claim with respect to fees paid by its shareholders. This claim, therefore, is not the appropriate subject of a derivative action.

In an effort to skirt this difficulty, plaintiff argues that the Court should equate the shareholders with the Fund, aggregate shareholder claims under § 15 and convert them into a claim of the Fund. This argument is meritless. In the first place, plaintiff requests the Court to discard the traditional distinction between derivative and individual causes of action, but has pointed to no authority supporting such a result. Moreover, even if the Court were to somehow equate the shareholders and the Fund for purposes of determining liability, the Court could not award the Fund damages belonging to its shareholders. Hence, plaintiff has not stated a cause of action upon which relief can be granted.[9]

A similar situation leading to a similar result was presented in *Cohen v. Fund Asset Management, Inc.*, [1980 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,433 (S.D.N.Y.1980). In *Cohen* the plaintiff fund shareholder claimed an excessive sales charge in a derivative suit. The Court concluded that:

> Since the sales charges flow directly from the investor to the distributor or securities dealer, it is the investor who is the proper party to assert this action, not the Fund, nor the plaintiff shareholder on behalf of the Fund.

*Id.* at pp. 92571–72. The plaintiff's attempt to distinguish *Cohen* on the grounds that it dealt with a single payment by investors, rather than a recurring fee, is unpersuasive. No matter how often the shareholders pay the charge, it is they, and not the Fund, that lose $65 with each payment, and they, not the Fund, are the proper recipients of damages caused by those fees. Plaintiff's claim under § 15 is accordingly dismissed.

### III.  *Jury Trial*

The Seventh Amendment "requires trial by jury in actions unheard of at common law, provided that the action involves rights and remedies of the sort traditionally enforced in an action at law, rather than in an action in equity or admiralty." *Pernell v. Southall Realty*, 416 U.S. 363, 375, 94 S.Ct. 1723, 1729, 40 L.Ed.2d 198 (1974). The question in this case is whether the plaintiff has stated claims under § 36(b) and § 20 which sound in equity or at law.

#### (a)  *Section 36*

The Second Circuit Court of Appeal's opinion in *In Re Gartenberg*, 636 F.2d 16 (2d Cir.1980) forecloses the plaintiff's right to a jury trial of his claim under § 36(b). That decision affirmed Judge Pollack's conclusion in *Gartenberg v. Merrill Lynch Assets Management, Inc.*, 487 F.Supp. 999 (S.D.N.Y.1980) that Congress intended in § 36(b) to create an equitable action for breach of fiduciary duty. The court, however, left open the possibility that, presented with a "bona fide claim" for damages under § 36(b), the outcome might be different.

Latching on to this language, plaintiff here has drafted his § 36(b) claim as one for "damages" rather than an "account" as sought in *Gartenberg I.* But the mere substitution of a word does not change the nature of relief requested. The claim under § 36(b) asserted in this case is indistinguishable from that in *Gartenberg I,* namely, that the defendants have breached their fiduciary duty to the Fund by taking excessive compensation. "If it did, the excessive portion of the fee must be returned." *In*

---

**9.** If payment of the $65 fee has caused the investment advisor or distributor to receive compensation in breach of its fiduciary duty, the plaintiff has a remedy under § 36. That section of the Act expressly directs the Court to include fees paid by shareholders in examining the propriety of the remuneration to the advisor or distributor. The plaintiff has indicated his awareness of as much by amending his § 36(b) claim to include the $65 fee.

*Re Gartenberg,* 636 F.2d at 18. Since the § 36(b) claim alleges nothing which would entitle plaintiff to a remedy other than equitable restitution, he is not entitled to a jury trial on the issue.

This view accords with that of the First Circuit, where Judge Breyer, writing in a factually similar case, stated:

> We can find no significant differences of any sort between the two complaints except that one uses the word 'account' while the other uses the word 'damages.' And in our view, the right to a jury trial cannot turn on the simple substitution of a different word.

*In re Evangelist,* 760 F.2d 27, 31 (1st Cir. 1985). Accordingly, plaintiff is not entitled to a jury trial of his § 36(b) claim.

#### (b) *Section 20*

 Plaintiff also contends that his § 20 claim for damages entitles him to a jury trial. To determine whether this claim sounds in equity or in law, the Court must "examine the nature of the issue to be tried in the light of historic legal and equitable practices applicable to issues of a similar nature." *In Re Gartenberg,* 636 F.2d at 18; *See also, Maldonado v. Flynn,* 477 F.Supp. 1007 (S.D.N.Y.1979) (J. Weinfeld).

The nature of relief available to redress a violation of proxy regulations depends upon the circumstances in which the violation occurred. In *Maldonado* Judge Weinfeld was asked to uphold a jury trial demand where the alleged proxy misrepresentations resulted in a tainted election of directors. He drew a distinction between cases involving financial deals where an "investor is cashing in on his investment or changing its essential nature," and other corporate actions, such as elections, and concluded that "pecuniary damages do not, as a matter of course, flow from an improper election." *Maldonado,* 477 F.Supp. at 1009–10. After assessing the nature of the plaintiff's claims for damages in light of the alleged violation, he concluded that "in the event plaintiff prevails, it is clear that to the extent it is established that the cor-

poration was damaged, restitution would be the remedy." *Id.,* at 1011.

In the instant case, this Court concludes that a proxy misrepresentation that results in the continuation of a contract for advisory fees, like one resulting in a tainted election of directors, would lead to equitable relief, such as an order to hold a new shareholders vote upon corrected proxy materials, recission or reformation of the agreement and restitution of excessive fees. The plaintiff has alleged no facts which could reasonably entitle him to damages at law. Accordingly, the defendants' motion to strike plaintiff's jury trial demand as to the § 20 claim is granted.

### CONCLUSION

For the reasons stated above, the Court dismisses plaintiff's claims under §§ 12 and 15 of the Investment Company Act of 1940 and strikes plaintiff's demand for a jury trial as to the remaining claims.

SO ORDERED.